GRUENDER, Circuit Judge,
concurring in part and dissenting in part.
I join all of the court’s opinion except that part holding that the expansive terms of Section 7.H(i) do not entitle Monarch to the attorneys’ fees that it incurred in successfully pursuing its breach-of-contract claim against Freedom and its claim for injunctive relief against all the defendants.
While under Missouri law each litigant generally must bear his attorney’s fees, “[o]nce liability on a contract has been determined, damages in the form of attor *640 ney’s fees permitted under the contract follow as a matter of law.” State ex rel. Chase Resorts, Inc. v. Campbell, 913 S.W.2d 832, 835 (Mo.Ct.App.1995). It is the task of this court, then, to determine whether the parties intended that Section 7.H(i) require Freedom to indemnify Monarch for the attorneys’ fees incurred in successfully establishing the defendants’ unauthorized disclosure of PHI. “In determining the parties’ intent, the courts look to the language of the contract, giving the terms their plain, ordinary, and usual meaning and so construing the terms to avoid rendering other terms meaningless.” Stahlhuth v. SSM Healthcare of St. Louis, 289 S.W.3d 662, 670 (Mo.Ct.App.2009). Section 7.H(i) bears repeating:
[Freedom] will indemnify and hold harmless the District and Plan ... from and against any claim, cause of action, liability, damage, cost or expense, including attorneys’ fees and court or proceeding costs, arising out of or in connection with any unauthorized use or disclosure of PHI or any failure in security measures affecting PHI or any other breach of the terms of this Agreement by [Freedom] or any person or entity under [Freedom’s] control.
(emphasis added). “ ‘Arising out of is a ‘broad, general, and comprehensive’ term ordinarily meaning ‘originating from’ or ‘having its origin in’, ‘growing out of or ‘flowing from.’ ” Beard v. Beard, 723 S.W.2d 542, 544 (Mo.Ct.App.1987) (quoting Baca v. N.M. State Highway Dept., 82 N.M. 689, 486 P.2d 625, 628 (N.M.Ct.App. 1971)); see also Schmidt v. Utils. Ins. Co., 353 Mo. 213, 182 S.W.2d 181, 183 (1944). Thus, to the extent Monarch seeks the attorneys’ fees incurred, first, in establishing that Freedom breached the BAA by disclosing PHI without authorization and, second, in enjoining the defendants to return the PHI, it seems plain that those expenses necessarily “arose out of’ or were “in connection with” the defendants’ “unauthorized ... disclosure of PHI.”
The opposite result reached by the court rests on its conclusion that Missouri law requires an indemnity clause to provide expressly for “litigation between the parties” before allowing a prevailing party to recover attorneys’ fees incurred during inter-party litigation. Ante, at 638. In my view, such a talismanic requirement forsakes what the court rightly terms the “cardinal principle” of contractual interpretation — “to ascertain the intention of the parties.” Ante, at 638 (quoting Dunn Indus. Grp. v. City of Sugar Creek, 112 S.W.3d 421, 428 (Mo.banc 2003)). Moreover, the two reasons proffered by the court do little to persuade otherwise.
First, the court derives its special rule of contractual interpretation from Nusbaum v. City of Kansas City, 100 S.W.3d 101 (Mo.banc 2003) (per curiam). In the court’s view, the Missouri Supreme Court in Nusbaum announced a bright-line rule that “in order for a party to recover attorneys’ fees incurred in enforcing its right to indemnity under a contract, the indemnity clause at issue must expressly refer to the enforcement of the right to indemnity.” Ante, at 637 (emphasis added). Based on this reading, the court extrapolates that “the Missouri Supreme Court would require an indemnity clause to contain express language referencing litigation between the parties before interpreting it to allow a party to recover attorneys’ fees incurred in an action asserting its rights under the contract.” Ante, at 638. Because I disagree with the court’s characterization of Nusbaum’s reasoning, I likewise disagree with its extension of that reasoning in the present case. The court in Nusbaum did maintain that the legal expenses incurred in an indemnitee’s action against its indemnitor fell outside the terms of the contract’s indemnity clause, but it did not adopt the rule attributed to *641 it by the court today. Far from rejecting the indemnitee’s claim for legal expenses for want of the requisite magic words in the contract, the court in Nusbaum held that the award of legal expenses was not warranted because “nothing in the indemnification provision suggests that it provides for the recovery of legal expenses incurred in establishing the right to indemnity.” See 100 S.W.3d at 109. The indemnity clause at issue in Nusbaum provided simply for recovery of damages, including legal expenses, arising out of the indemnitor’s negligence. Hence, litigation concerning the parties’ contractual duties fell outside the circumscribed terms of the indemnity clause. Id. In the present case, by contrast, the attorneys’ fees to which I believe Monarch is entitled were incurred in a suit to establish and rectify the defendants’ unauthorized disclosure of PHI. These expenses fall squarely within the plain language of Section 7.H(i), and Nusbaum in no way alters this outcome.
That Nusbaum did not lay the foundation for the framework constructed by the court today is further evidenced by a brief survey of state court and federal court applications of Missouri law in cases that bear considerable resemblance to the present one. In RJF International Corp. v. B.F. Goodrich Co., 880 S.W.2d 366 (Mo.Ct. App.1994), for instance, the Missouri Court of Appeals held that an indemnity clause entitled a prevailing party to legal expenses incurred in litigation against its contractual counterpart, see id. at 371-72, cited with approval in Nusbaum, 100 S.W.3d at 109, despite the absence of terms “expressly referring]” to litigation between the parties, see ante, at 637.[5] Likewise, in Fortune Southfield Co. v. Kroger Co., 931 F.2d 1282 (8th Cir.1991), this court held that an indemnity clause strikingly similar to the present one entitled the prevailing party to the legal expenses incurred in an inter-party suit. See id. at 1284 (applying Missouri law).[6] And, finally, in Praetorian Insurance Co. v. Site Inspection, LLC, 604 F.3d 509 (8th Cir. 2010), we held that yet another indemnity clause contemplated the shifting of attorney’s fees incurred in inter-party litigation even though the clause did not refer specifically to litigation between the' parties and, further, did not even mention attorney’s fees. See id. at 515-16 (applying Missouri law).[7] I see no reason why the indemnity clause at issue in the present case should beget a different result.[8]
*642 As the second basis for its decision, the court expresses concern that, because indemnity suits “ordinarily arise in the context of third-party claims,” the “non-drafting party may be unaware that ... it is actually assenting to cover attorneys’ fees the other party incurs in suing for breach of the agreement” absent contractual terms expressly providing for shifting legal expenses incurred in inter-party litigation. Ante, at 638. Again, this position appears to be irreconcilable with that taken in RJF International Corp., where the Missouri Court of Appeals interpreted an indemnity clause materially indistinguishable from Section 7.H(i) and held that “[t]he terms of the agreement are not limited to attorney’s fees and costs incurred while defending against [third-party claims].” See 880 S.W.2d at 372; see also Praetorian Ins. Co., 604 F.3d at 516 (remarking that “[o]nly a strained reading” of an indemnity clause could yield a third-party suit limitation absent language to that effect (quoting Litton Microwave Cooking Prods. v. Leviton Mfg. Co., 15 F.3d 790, 796 (8th Cir. 1994))). Moreover, solicitude for non-drafting parties is lessened significantly in cases, such as this one, that involve “contracts between businesses of equal power and sophistication.” See Praetorian Ins. Co., 604 F.3d at 515 (quoting Util. Serv. & Maint., Inc. v. Noranda Aluminum, Inc., 163 S.W.3d 910, 913 (Mo.banc 2005)).[9] Finally, by reading Section 7.H(i) to require that Freedom reimburse Monarch only in actions brought by third parties, the court renders superfluous a subsequent section of the BAA. Section 7.1(1) entitles Monarch to tender its defense to Freedom or undertake its own defense at Freedom’s expense should Monarch be “named a party in any judicial, administrative or other proceeding arising out of or in connection with any unauthorized use or disclosure of PHI ... or any other breach of the terms of [the BAA] by [Freedom].” As Section 7.1(1) expressly provides for Freedom’s obligations in the event of third-party claims against Monarch, the court’s redundant construction of the preceding section “leaves [Section 7.1(1) ] without function or sense.” See Dunn Indus. Grp., 112 S.W.3d at 428.
Accordingly, I respectfully dissent from the court’s holding that Monarch is not entitled to the attorneys’ fees incurred in litigating its breach-of-contract claim and its claim for injunctive relief. In all other respects, I concur.

. "[Buyer agrees] to indemnify and hold harmless [Seller] from and against any and all claims, liabilities, damages, losses, costs and expenses, including without limitation, reasonable counsel fees and disbursements resulting from ... any breach or default in the performance or observance by [Buyer] of any of the covenants or other obligations which [Buyer] is to perform or observe under this Agreement, including, without limitation, [Buyer’s] failure to satisfy any Assumed Liability.” RJF Int’l Corp., 880 S.W.2d at 371-72 (third alteration in original).

. "[Seller] agrees to indemnify and hold [Buyer] harmless against any loss, cost, liability or expense, including cost and expenses of litigation and reasonable attorneys fees, arising out of ... [Seller’s] obligations ... accruing prior to the ... Closing Date as to the [property] ... or ... by reason of the incorrectness or breach by [Seller] of any of its representations, warranties and agreements set forth in this agreement.” Fortune Southfield Co., 931 F.2d at 1284 (third, sixth, eighth, and ninth alterations in original).

. "[T]he requesting company, their representatives and reinsures hold [the performing company] harmless from any claims or liabilities arising out of any decisions or actions made based on information developed in this report.” Praetorian Ins. Co., 604 F.3d at 515.

. Additionally, the court’s reliance on Lee v. Investors Title Co., 241 S.W.3d 366 (Mo.Ct.App.2007), and Weitz Co. v. MacKenzie House, L.L.C., No. 07-0103, 2010 WL 1839118 (W.D.Mo. May 6, 2010), is misplaced. • At most, these cases stand for the unremarkable proposition that an indemnity clause that ex *642 pressly references litigation between the contractual parties is sufficient to entitle a prevailing party to the attorney's fees incurred in litigation between the contractual parties. The cases do not suggest that express language is necessary to such a result.

. To highlight the equivalency of bargaining power between the parties in this case, I note that Monarch, like Freedom, was subject to ''mirror-image'' indemnity obligations. See BAA Section 7.H(ii).